IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

THOMAS R. HUBBARD, *et al.*,

        Hubbards,

v.                                                               Civil Action No. 3:11CV237-JAG

STONY POINT LAND, INC.,

        Stony Point.

## MEMORANDUM OPINION

### I.

This matter is before the Court on appeal from a final order of the United States Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court") entered on February 24, 2011. The Bankruptcy Court awarded judgment in favor of appellee Stony Point Land, Inc., ("Stony Point") against appellants Thomas R. Hubbard and Katherine Hubbard (collectively, the "Hubbards"). In doing so, the Bankruptcy Court dismissed Count II of the Hubbards' complaint for breach of contract (the "Complaint") and Count I of Stony Point's counterclaim for specific performance (the "Counterclaim").

This appeal arises out of a civil action filed by the Hubbards in the Circuit Court for the City of Richmond on January 5, 2009 (the "State Court Action"). The Complaint alleged, in two separate counts: (1) that Stony Point violated the Virginia Property Owners' Association Act, Va. Code §§ 55.508, *et seq*, by failing to make a valid delivery of the Property Owner's Association disclosure packet; and (2) that Stony Point breached its real estate purchase agreement with the Hubbards dated September 21, 2006. In turn, Stony Point filed a

Counterclaim requesting specific performance of the contract to purchase the lot (Counterclaim Count I) or, in the alternative, an award of damages (Counterclaim Count II).

On September 29, 2009, Judge Richard Taylor, Jr., ruled against the Hubbards with respect to Count I of their Complaint and entered an order dismissing the claim. On October 13, 2009, Stony Point non-suited Count II of the Counterclaim, leaving only Count II of the Complaint and Count I of the Counterclaim remaining.

Thereafter, on March 12, 2010, Stony Point filed a voluntary Chapter 11 bankruptcy petition and removed the State Court Action to the Bankruptcy Court, in accordance with Rule 9027 of the Federal Rules of Bankruptcy Procedure. The Bankruptcy Court allowed Judge Taylor's previous rulings to stand, without permitting the Hubbards to re-litigate the issues decided in state court. The Bankruptcy Court then held a trial in which it ultimately found in Stony Point's favor on the remaining claims not decided in state court. The Hubbards timely filed a Notice of Appeal to this Court.

For the reasons stated herein, the Court affirms the rulings of the Bankruptcy Court.

II.

On September 21, 2006, the Hubbards signed a real estate purchase agreement (the "Agreement") to purchase Lot 2 from Stony Point in a planned 13-lot subdivision. The purchase price was $450,000 with the Hubbards paying a deposit of $45,000 upon execution of the Agreement. The Agreement specified that settlement was to take place within ten days of Stony Point's completion of the Phase One Infrastructure construction. Stony Point was further obligated to incorporate the Riverwatch Homeowners' Association ("Riverwatch Association"). On September 22, 2006, and again on September 28, 2006, the Hubbards signed a Property Owners' Association Disclosure form which acknowledged receipt of the disclosure packet (the

"Disclosure Packet") required under the Virginia Property Owners' Association Act ("VPOA Act"). The Riverwatch Association, however, was not incorporated until May 22, 2008.

On August 27, 2008, the Hubbards emailed a broker and requested another copy of the Disclosure Packet. The Hubbards were directed to a website containing the requested documents, and, later in the email exchange, the Hubbards acknowledged having "electronic versions of everything." (Stony Point's Br., Ex. D 4.)

On September 10, 2008, the Hubbards notified Stony Point of their intent to cancel the Agreement for failure to deliver the Disclosure Packet or notify them that it was not available. *See* Va. Code Ann. § 55-509.5 (2011).

The Phase One Infrastructure was completed in December 2008.

At some point thereafter, Stony Point began to market Lot 2 in an effort to mitigate damages. On February 23, 2010, Stony Point listed the property with its real estate agent. The Bankruptcy Court found that "at all times, [Stony Point] remained ready, willing and able to close on the sale of Lot 2 to the [Hubbards], even after it commenced its remarketing efforts." (Bankr. Mem. Op. 16.)

### III.

The applicable standard of review of a bankruptcy court's findings of fact is whether such findings are clearly erroneous. *Green v. Staples (In re Green)*, 934 F.2d 568, 570 (4th Cir. 1991); Bankruptcy Rule 8013. "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). "[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the

3

credibility of witnesses." *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 250 (4th Cir. 1994) (quoting Bankruptcy Rule 8013).

Conclusions of law and questions of statutory interpretation, however, are reviewed *de novo*. *Bunker v. Peyton (In re Bunker)*, 312 F.3d 145, 150 (4th Cir. 2002); *Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.)*, 26 F.3d 481, 483 (4th Cir. 1994). Consequently, "[i]n cases where the issues present mixed questions of law and fact, the court applies the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts." *Williams v. McDow (In re Williams)*, No. 10CV049, 2010 WL 3292812, at *3 (W.D. Va. Aug. 19, 2010) (citing *Gilbane Bldg. Co. v. Fed. Reserve Bank*, 80 F.3d 895, 905 (4th Cir. 1996)).

## IV.

### A. Waiver by the Hubbards

As a preliminary matter, Stony Point argues that the Hubbards waived their right to appeal Judge Taylor's September 29, 2009, order dismissing Count I of the Complaint for two reasons: (1) the Hubbards never asked the Bankruptcy Court to revisit Judge Taylor's ruling; and (2) the Hubbards waived their ability to appeal the ruling regarding delivery of the Disclosure Packet because they did not object to Judge Taylor's order in state court. The Court disagrees.

The Bankruptcy Court's memorandum opinion clearly states that the Hubbards' objections in the State Court Action were preserved for appeal because it declined to revisit those rulings made prior to the case's removal:

> Rule 9027(i) provides that "[a]ll . . . orders and other proceedings had prior to removal shall remain in full and effect . . . ." As Judge Taylor's orders dealt with issues pertaining to Virginia substantive law (a subject with which the state tribunal is very familiar) this Court declined to revisit those rulings made prior to the removal of this action, and the parties' objections to Judge Taylor's rulings are preserved.

4

(Bankr. Mem. Op. 3, fn. 2.) The unequivocal language of the Bankruptcy Court clearly noted the Hubbards' objections in the State Court Action as well as the instant bankruptcy proceeding. As a result, the Hubbards' objections to Judge Taylor's rulings were properly preserved on appeal in this Court. The Court finds that the Hubbards did not waive their right to appeal Judge Taylor's September 29, 2009, ruling.

B.  Violation of the Virginia Property Owners' Association Act

The Hubbards' primary argument on appeal is that Judge Taylor erred in holding that the Hubbards received the requisite Disclosure Packet from Stony Point, as required under Section 55-509.5 of the VPOA Act. *See* Va. Code § 55-509.5 (2011). Instead, they claim that, because the Riverwatch Association was not incorporated until approximately twenty (20) months after they received the Disclosure Packet, their signatures on the September 22 and 28, 2006, disclosure forms are null and void, and they validly cancelled the Agreement on September 10, 2008. Essentially, the Hubbards argue that the disclosure forms were statutorily unavailable since they predated the Riverwatch Association's corporate existence. The Court disagrees and affirms Judge Taylor's rulings in the State Court Action.

Under Virginia law, pre-incorporation actions of *de jure* corporations are valid and binding on the parties involved. *See Geographic Network Affiliates-Int'l v. Enter. for Empowerment Found.*, 68 Va. Cir. 185, 190 (Norfolk 2005) (holding a contract was valid even though it had been signed prior to the company being formed); *K.E.B. Investments v. The Snellings Group*, 1991 WL 834761 (City of Richmond Cir. Ct. 1991) (a corporation could maintain a cause of action to enforce an assignment contract even though the entity did not exist until after the execution from which its claim arose); *see also, T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 842 (4th Cir. 2004) ("Virginia law allows an agent or

promoter of a business entity to bind the entity to contracts even before the entity is formed."); *Bolling v. General Motors Acceptance Corp.*, 204 Va. 4, 10, 129 S.E.2d 54, 58 (1963) (although "on the date the contract was signed the corporation had not yet come into legal existence," the parties were bound because the corporation later did come into existence and continued to abide by the contract).

Undoubtedly, the Hubbards were aware that future incorporation of the Riverwatch Association was a condition-precedent to full performance of the Agreement. Section 5 of the Agreement clearly stated that the Riverwatch Association had not been incorporated at the time of execution and that this would be remedied prior to closing on the sale of the lot.[1] Moreover, the Hubbards acknowledged in section 12 of the Agreement that the Disclosure Packet had been properly delivered to them prior to signing. All parties, therefore, were aware of the lack of incorporation and timeline for achieving full performance of the contract. The Hubbards cannot now cancel a contract to which they knowingly assented and understood. They signed disclosure forms on September 15, 22, and 28, 2006, which recognized their receipt of the Disclosure Packet.

Furthermore, on August 27, 2008, the Hubbards again acknowledged receipt of the Disclosure Packet though email communications with Stony Point's agent. They had three days from the August disclosure to cancel the contract under former Va. Code § 55-511, but failed to do so. Thus, they lost any right to rescind the contract.

Regardless of the Riverwatch Association's lack of corporate status at the Agreement's signing, its incorporation on May 22, 2008, before the final closing date on the property at issue, validated its past actions. *See Investors & Trust v. Sweet Deals, Inc.*, 1993 WL 945597 (Fairfax Cir. Ct. 1993) (holding that a deed executed by a corporation, prior to its formal incorporation

---

[1] The Riverwatch Association was ultimately incorporated on May 22, 2008.

was valid because "all parties . . . clearly anticipated that the incorporation would come into existence soon after the transaction. That it did is sufficient to validate the prior transaction.").

The Court finds that the Bankruptcy Court did not err in adopting and ratifying Judge Taylor's ruling.

### C. Abandonment of the Agreement

The Hubbards' also argue that the Bankruptcy Court erred in ruling that Stony Point had not abandoned the Agreement. Moreover, they argue that the Bankruptcy Court erred in ruling that the Hubbards waived the defense of abandonment by not pleading it affirmatively, and in ruling that, in any event, Stony Point had not breached the contract. The Hubbards contend that abandonment is not a rule 8(c) affirmative defense that requires initial pleading. They also argue that Stony Point's relisting of Lot 2 constituted an abandonment of the Agreement. Essentially, the Hubbards believe that Stony Point abandoned the contract when it attempted to mitigate damages, thus waiving its right to enforce the Agreement. The Court disagrees and affirms the ruling of the Bankruptcy Court.

As a general rule, affirmative defenses are waived if they are not pled in a responsive pleading to a complaint. *RCSH Operations, L.L.C. v. Third Crystal Park*, 115 Fed. Appx. 621, 629 (4th Cir. 2004) ("It is settled that a failure to raise an affirmative defense in the appropriate pleading results in the loss of that defense."). The Sixth Circuit Court of Appeals has held that when a "defense rests on a rescission of a contract" it "must be alleged in the answer if a defendant seeks to avail himself of it in order to defeat recovery on a contract." *Jack Mann Chevrolet Co. v. Associates Inv. Co.*, 125 F.2d 778, 784 (6th Cir. 1942). Abandonment is an affirmative defense. *See United States v. Farmer*, 370 F.3d 435, 441 fn.2 (4th Cir. 2004); *Sun Yung Lee v. ZOM Clarendon, L.P.*, 665 F. Supp. 2d 603, 614-15 (E.D. Va. 2009).

In this case, the Hubbards failed to plead abandonment as an affirmative defense in their responsive pleading to Stony Point's Counterclaim in the State Court Action. The Bankruptcy Court was correct in finding that "[the Hubbards] have waived any defense of abandonment" because they "did not raise the defense in their pleadings." (Bankr. Mem. Op. 15.)

On the merits of the abandonment issue, the Hubbards argue that Stony Point's act of marketing Lot 2 for sale constituted an abandonment of the Agreement. The Bankruptcy Court found, however, that marketing the property was merely an attempt to mitigate damages incurred by the Hubbards' notice of cancellation. It found that Stony Point "never departed from its efforts to enforce the Contract as it demanded in its Counterclaim." (Bankr. Mem. Op. 16.) The Court agrees.

Stony Point timely notified the Hubbards when it was ready to finalize the sale in December 2008. Furthermore, Stony Point has maintained its position that, at all times, it was ready, willing, and able to convey the property to the Hubbards. Stony Point's actions merely demonstrated an intent to mitigate damages, not abandon its right to enforce the Agreement.

V.

For the reasons stated herein, the Court affirms the rulings of the Bankruptcy Court. The appeal is hereby dismissed. An appropriate Order shall issue.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

/s/
John A. Gibney, Jr.
United States District Judge

Date: August 15, 2011
Richmond, VA